IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| CALVIN BROOKS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:21cv541-ECM-SMD |
| | ) | |
| MIKE KISER, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

### **ORDER & RECOMMENDATION OF THE MAGISTRATE JUDGE**

Pro se Plaintiff Calvin Brooks ("Plaintiff") filed a Complaint (Doc. 1) for employment discrimination based on Title VII of the Civil Rights Act of 1964 ("Title VII"), the Age Discrimination in Employment Act of 1967 ("ADEA"), the Americans with Disabilities Act of 1990 ("ADA"), and other federal law. Compl. (Doc. 1) p. 3. Before the Court is Defendants' Motion to Dismiss (Doc. 9), Plaintiff's Response (Doc. 16) in opposition thereto, and Defendants' Reply (Doc. 17). For the reasons that follow, the undersigned recommends that Defendants' Motion (Doc. 9) be denied and that Plaintiff be afforded an opportunity to amend his complaint.

**I.    FACTUAL BACKGROUND**

Plaintiff began working for Defendant Gulf Cold Storage Company as a stacker in August 2012. Compl. (Doc. 1-1) p. 1. As a stacker, Plaintiff's job required him to stack boxes of product on pallets that were transferred to the blast unit for freezing. *Id.* Plaintiff worked in this position for six to eight months before he was reassigned to sanitation. *Id.* As part of sanitation, Plaintiff was required to clean the dock floors as well as the outside

grounds. *Id.* He also started using a forklift to move a dumpster around the building to pick up trash. *Id.*

In July 2014, Plaintiff "became over" the sanitation department. *Id.* at 2. Sometime later, Defendant Mike Kiser hired Walter Griffen, a White employee, and placed him over Plaintiff. *Id.* Plaintiff contends that Griffen was paid more than he was, and that he complained to his employer about the pay discrepancy. *Id.*

At some point during Plaintiff's employment, Defendant Betty Brantley observed Plaintiff driving the forklift; she then approached Defendant Mike Kiser and Bill Sewell and requested that Plaintiff drive the forklift for the tilt table. *Id.* at 1. Plaintiff complained about not receiving lift operator pay. *Id.* Plaintiff contends that several White employees were hired as forklift operators and were paid more even though they had less experience. *Id.* at 2.

In February 2015, a supervisor position opened. *Id.* Plaintiff applied for the position but was denied. *Id.* A White employee was hired as supervisor and was paid more. *Id.* In May 2016, Plaintiff was again denied the supervisor position, and the position was awarded to a younger employee who was paid more. *Id.* In September (presumably that same year), a White employee was appointed supervisor over Plaintiff although he had only been an employee for a few months. *Id.*

As part of his employment, Plaintiff performs multiple jobs—including sanitation, yard, lift operator, maintenance, and general labor—that younger employees are not required to perform. *Id.* This also includes operating a jack hammer, which Plaintiff

contends weighs as much as he does. *Id.* Plaintiff alleges that unnamed Defendants say that his "old a** gone work or die trying." *Id.*

In addition to his regular employment, Plaintiff was hired to cut grass for Defendant and claims he was never paid. Compl. (Doc. 1-1) p. 4. Plaintiff complained and was told that if he did not continue cutting the grass he would be fired from his regular employment. *Id.* Plaintiff was ultimately fired from cutting grass and a White person was hired and promptly paid. *Id.*

Plaintiff claims that he is constantly retaliated against because of his complaints about equal pay and that he is forced to operate a forklift or face termination. *Id.* at 5. Plaintiff has filed multiple EEOC charges and claims that, after finding out about the charges, Defendants cut his hours so that he cannot pay his attorney for representing him in the case against them. *Id.* at 5-6.

## II.   JURISDICTION

Federal courts are courts of limited jurisdiction. *Exxon Mobile Corp. v. Allapattah Servs.*, 545 U.S. 546, 552 (2005). As such, they only have the power to hear cases that they have been authorized to hear by the Constitution or Congress. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Federal courts have jurisdiction over two general types of cases: (1) cases that arise under federal law[1] and (2) cases in which the amount in controversy exceeds $75,000 and there is diversity of citizenship among the parties.[2] *Home*

---

[1] 28 U.S.C. § 1331.

[2] 28 U.S.C. § 1332(a).

3

*Depot U.S.A., Inc. v. Jackson,* 139 S. Ct. 1743, 1746 (2019). Courts presume that causes of action "lie[] outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen,* 511 U.S. at 377.

Here, Plaintiff asserts discrimination and retaliation claims under Title VII, the ADEA, and the ADA. Compl. (Doc. 1) p. 3. Plaintiff's claims present federal questions within this Court's original jurisdiction under 28 U.S.C. § 1331.

### III.   LEGAL STANDARDS

#### A.  Federal Pleading Standard

Rule 8 of the Federal Rules of Civil Procedure requires a complaint to contain a short and plain statement of the claim showing that the plaintiff is entitled to relief. FED. R. CIV. P. 8(a)(2). "Each allegation must be simple, concise, and direct." FED. R. CIV. P. 8(d)(1). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfullly-harmed-me accusation.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" are insufficient. *Id.* (internal quotations omitted). A complaint must contain enough well-pleaded facts to "allow [] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Additionally, Rule 10 requires that "a party must state its claims . . . in numbered paragraphs, each limited as far as practicable to a single set of circumstances." FED. R. CIV. P. 10(b). These Rules, then, require a complaint—at a minimum—to set forth claims in

numbered paragraphs and allege sufficient facts for a court to reasonably infer that a defendant's actions were unlawful.

### B. Failure to State a Claim

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain factual allegations sufficient "to raise a right to relief beyond the speculative level." *Twombly*, 550 U.S. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient to state a claim. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). The Eleventh Circuit explains that "complaints . . . must now contain either direct or inferential [factual] allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Randall v. Scott*, 610 F.3d 701, 707 n.2 (11th Cir. 2010) (internal citations and quotations omitted). Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678.

To determine whether a plaintiff has stated a claim, a court should first "eliminate any allegations in the complaint that are merely legal conclusions," and then, if there are any well pleaded factual allegations remaining, assume their veracity and decide "whether they plausibly give rise to an entitlement to relief." *Amer. Dental Assoc. v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (internal citations and quotations omitted). "The plausibility standard is met only where the facts alleged enable 'the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Franklin v. Curry*, 738 F. 3d 1246, 1251 (11th Cir. 2013) (quoting *Twombly*, 550 U.S. at 556).

### C. Pro Se Litigants

Federal courts must "show a leniency to pro se litigants not enjoyed by those with the benefit of a legal education." *GJR Invs., Inc. v. Cnty. Of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998) (italics removed). A document filed pro se is "to be liberally construed," and a pro se complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotations omitted). Despite this leniency, a pro se plaintiff must still comply with the threshold requirements of the Federal Rules of Civil Procedure. *Beckwith v. Bellsouth Telecomms. Inc.*, 146 F. App'x 368, 371 (11th Cir. 2005). Importantly, a district court "does not have license to rewrite a deficient pleading," and—like complaints drafted by attorneys—a pro se complaint must be dismissed if it fails to state a claim on which relief may be granted. *See, e.g.*, *Osahar v. U.S. Postal Serv.*, 297 F. App'x 863, 864 (11th Cir. 2008); *Albrata v. Advan, Inc.*, 490 F.3d 826, 834 (11th Cir. 2007).

## IV.   ANALYSIS

### A.   Plaintiff's Complaint does not meet federal pleading standards.

Plaintiff's Complaint fails to give Defendants adequate notice of the claims against them and therefore violates Rule 8(a)(2). Complaints that violate Rule 8(a)(2) are frequently referred to as shotgun pleadings. *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1320 (11th Cir. 2015); *see also Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1294-95 (11th Cir. 2018) (explaining that a shotgun pleading is one that violates the short and plain statement requirement of Rule 8). The Eleventh Circuit recognizes four

categories of shotgun pleadings: (1) "a complaint containing multiple counts where each count adopts the allegations of all preceding counts"; (2) a complaint not falling into the first category but nevertheless "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action"; (3) a complaint that does not separate "into a different count each cause of action or claim for relief"; and (4) a complaint "asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Weiland*, 792 F.3d at 1321-23. Regardless of the category under which it falls, a shotgun pleading fails "to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* at 1223.

The Eleventh Circuit shows "little tolerance for shotgun pleadings," even when the plaintiff proceeds pro se. *See, e.g.*, *Arrington v. Green*, 757 F. App'x 796, 797 (11th Cir. 2018) (quoting *Vibe Micro, Inc.*, 878 F.3d at 1295); *Sarhan v. Miami Dade Coll.*, 800 F. App'x 769, 771 (11th Cir. 2020); *Blochowicz v. Wilkie*, 2020 WL 5028224, at *3 (S.D. Ga. Aug. 25, 2020) (noting that the court "takes a dim view of shotgun pleadings"). However, "[b]efore dismissing a complaint with prejudice on shotgun pleading grounds, the district court must first explain how the pleading violates the shotgun-pleading rule and give the plaintiff at least one opportunity to re-plead the complaint." *Arrington*, 757 F. App'x at 797. If "the plaintiff fails to comply with the court's order—by filing [another complaint] with the same deficiency—the court should strike his pleading or, depending on the circumstances, dismiss his case and consider the imposition of monetary sanctions." *Vibe Micro, Inc.*, 878 F.3d at 1295.

7

Here, Plaintiff's Complaint falls into the fourth category of shotgun pleadings described by the Eleventh Circuit. While Plaintiff divides his Complaint into separate claims and provides factual allegations that purportedly support those claims, it is unclear against whom Plaintiff is asserting his claims. For example, in Plaintiff's "Race Discrimination in Pay, Promotions" section, Plaintiff provides narrative regarding how he was passed over for promotions and paid less than other employees; however, he never identifies the Defendant(s) whom he believes liable for these acts. Similarly, in his "Age Discrimination in Employment" section, Plaintiff alleges that Defendants Brantley, Lee, Devos, Kiser, Byrd, and others forced Plaintiff to perform certain jobs by himself, but he never states whom this claim is against. This leaves Defendants and the Court guessing as to which claims Plaintiff asserts against which Defendants. As such, Plaintiff's Complaint is an impermissible shotgun pleading.

Further, Plaintiff's Complaint violates Rule 10 of the Federal Rules of Civil Procedure. Plaintiff fails to set forth his claims with clear, concise allegations contained in individually numbered paragraphs, limited as far as practicable, to a specific set of circumstances. In many cases, Plaintiff does not provide the relevant dates of the alleged conduct that is the basis of his claims. As such, Plaintiff's Complaint fails to meet the federal pleading standards.

Because Plaintiff's Complaint fails to meet the federal pleading standard, the undersigned will afford Plaintiff an opportunity to amend his Complaint. *See Arrington*, 757 F. App'x at 797 (requiring that pro se plaintiffs be given an opportunity to amend their complaints to meet the requirements of the Federal Rules of Civil Procedure). If Plaintiff

chooses to amend his complaint, he is advised that some of the claims contained in the Complaint, as explained below, are not viable or are otherwise not properly pleaded.

### B.     Plaintiff's involuntary servitude claim is not viable.

The Thirteen Amendment provides: "Neither slavery nor involuntary servitude, except as punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction." U.S. Const. amend. XIII. "'[I]nvoluntary servitude' necessarily means a condition of servitude in which the victim is forced to work for the defendant by the use or threat of physical restraint or physical injury or by the use or threat of coercion through law or the legal process." *United States v. Kozminski*, 487 U.S. 931, 942 (1988). Compulsion is a prerequisite to proof of involuntary servitude, so "[w]hen the employee has a choice, even though it is a painful one, there is no involuntary servitude[.]" *Brooks v. George Cnty., Miss.*, 84 F.3d 157 (5th Cir. 1996).

Here, Plaintiff's involuntary servitude claim is based on allegations that (1) he was hired to cut grass for Defendant; (2) he was not paid for that job over several years; and (3) he was threatened with termination if he did not continue cutting the grass without pay. Compl. (Doc. 1-1) p. 4. That conduct does not rise to the level of slavery or involuntary servitude. Indeed, Plaintiff had the option to discontinue cutting Defendant's grass, even if the consequences from that choice were unpleasant. *See Kozminski*, 487 U.S. at 943 ("[I]n every case in which this Court has found a condition of involuntary servitude, the victim had no available choice but to work or be subject to legal sanction."). Thus, on Plaintiff's facts, accepted as true, a claim for slavery or involuntary servitude under the Thirteenth

Amendment is not viable. *See Jones v. Ocwen Fin. Corp.*, 2019 WL 3798467, at *2-3 (M.D. Fla. Aug. 13, 2019) (finding that the plaintiff did not state a claim for involuntary servitude where she was required, *inter alia*, to work holidays and attend depositions on company holidays).

    **C.    Plaintiff cannot bring claims under Title VII, the ADEA, or the ADA against individual defendants.**

Because Plaintiff's Complaint violates the federal pleading standard, it is unclear if Plaintiff is asserting Title VII, ADEA, and ADA claims against individual Defendants. Compl. (Doc. 1-1). However, to the extent that he is, there is no individual liability under Title VII, the ADEA, or the ADA. *Mason v. Stallings*, 82 F.3d 1007, 1009 (11th Cir. 1996) ("We hold that the [ADA] does not provide for individual liability, only for employer liability); *Smith v. Lomax*, 45 F.3d 402, 403 n.4 (11th Cir. 1995) (Individuals "cannot be held liable under the ADEA or Title VII"); *Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir. 1991) ("The relief granted under Title VII is against the employer, not individual employees whose actions would constitute a violation of the Act."). Thus, if Plaintiff is attempting to bring Title VII, ADEA, or ADA claims against individual Defendants, those claims are not viable.

    **D.    It is unclear whether Plaintiff's Title VII, ADEA, and ADA claims are timely.**

Prior to filing a Title VII, ADEA, or ADA claim, a plaintiff first must file a charge of discrimination with the EEOC within 180 days after the alleged unlawful practice occurred. *McBrayer v. City of Marietta*, 967 F.2d 546, 547 (11th Cir. 1992); *Freeman v. Koch Foods of Ala.*, 777 F. Supp. 2d 1264, 1274 (M.D. Ala. 2011). When the allegedly

unlawful employment practices amount to a continuing violation, the time for filing an EEOC charge does not begin until the last occurrence of the discrimination. *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1221-22 (11th Cir. 2001). The purpose of the exhaustion requirement "is that the [EEOC] should have the first opportunity to investigate the alleged discriminatory practices to permit it to perform its role in obtaining voluntary compliance and promoting conciliation efforts." *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 929 (11th Cir. 1983). Judicial claims are allowed if they "amplify, clarify, or more clearly focus" the allegations in the EEOC complaint, but new acts of discrimination are inappropriate. *Wu v. Thomas*, 863 F.2d 1543, 1547 (11th Cir. 1989) (citation omitted). If the EEOC chooses not to act on a charge, a plaintiff must file suit in federal court within 90 days of receiving an EEOC right-to-sue letter. *Green v. Union Foundry Co.*, 281 F.3d 1229, 1233 (11th Cir. 2002). It is the plaintiff's initial burden to establish that he filed his complaint within this 90-day timeframe. *Id.*

Here, in his form Complaint, Plaintiff indicates that the EEOC has not issued a right-to-sue letter. Compl. (Doc. 1) p. 5. Curiously, he then states that he received a right-to-sue letter on May 12, 2021. *Id.* But Plaintiff does not provide his EEOC charge or his right-to-sue letter to this Court.[3] As such, the undersigned is unable to determine if Plaintiff has exhausted his administrative remedies or if he has timely filed suit in this Court. As such,

---

[3] Defendants attach an EEOC Charge filed by Plaintiff on May 4, 2021, to their Motion to Dismiss. Mot. Ex. 1 (Doc. 9-1) p. 2. However, the undersigned will not presume that the attached EEOC Charge is the Charge upon which Plaintiff bases this Complaint. Indeed, Plaintiff indicates that "he has filed several complaints to the E[.]E.O[.]C." Resp. (Doc. 16) p. 6. Although Plaintiff suggests that he has received a right-to-sue letter on May 12, 2021, it is unclear whether that letter was the result of the May 4, 2021 Charge attached by Defendants.

if Plaintiff chooses to amend his Complaint, he should attach his EEOC Charge and his right-to-sue letter, along with facts pertaining to when he received his right-to-sue letter, if any, so that this Court may determine whether his EEOC Charge and his Complaint to this Court are timely.

    **E.    It is unclear whether Plaintiff's Title VII, ADEA, and ADA claims are viable.**

Even if Plaintiff can show that he has timely filed suit in this Court after exhausting his administrative remedies with the EEOC, it remains unclear whether Plaintiff can state claims under Title VII, the ADA, or the ADEA.

First, it is unclear what type of Title VII claim Plaintiff intends to bring. Generally, Title VII makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Claims under Title VII include discrimination claims,[4] hostile work environment claims,[5] and retaliation claims.[6] Because the undersigned is uncertain

---

[4] To state a discrimination, claim under Title VII, a plaintiff must show that (1) he belongs to a protected class; (2) he was qualified to do the job; (3) he was subjected to adverse employment action; and (4) his employer treated similarly situated employees outside of his class more favorably. *Lewis v. City of Union City, Ga.*, 918 F.3d 1213, 1220-21, 1221-26 (11th Cir. 2019).

[5] To state a Title VII hostile work environment claim, the plaintiff must allege: (1) he belongs to a protected group; (2) he was subjected to unwelcome harassment; (3) the harassment was based on his membership in the protected group; (4) the harassment was severe or pervasive enough to "alter the terms and conditions of employment" and create a hostile or abusive working environment; and (5) the employer is responsible for that environment under a theory of either vicarious or direct liability. *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1276 (11th Cir. 2002).

[6] To state a Title VII retaliation claim, a plaintiff must show that (1) he engaged in a statutorily protected activity; (2) he suffered an adverse employment action; and (3) there was a causal connection between the

of the type of Title VII claim Plaintiff intends to bring, the undersigned cannot determine whether the claim is viable.[7]

Second, to state an ADA discrimination claim, a plaintiff must establish that (1) he has a disability as defined in the ADA; (2) he is a qualified individual—i.e., that, with or without reasonable accommodations, he can perform the essential functions of the job; and (3) he was discriminated against because of his disability. *See Mazzeo v. Color Resolutions Int'l, LLC*, 746 F.3d 1264, 1268 (11th Cir. 2014). Here, Plaintiff has alleged that he is sixty years old, but he does not provide clear, concise facts in his Complaint to support the remaining elements of an ADA discrimination claim. Therefore, the undersigned cannot determine if Plaintiff's ADA claim is viable.

Finally, to state an ADEA discrimination claim, a plaintiff must show that (1) he was a member of the protected class, which includes employees at least 40 years of age; (2) he was qualified for his position; (3) he was subjected to adverse employment action; and (4) he was replaced by or otherwise lost a position to a younger individual. *Chapman v. AI Transp.*, 229 F.3d 1012, 1024 (11th Cir. 2000). Again, Plaintiff does not provide clear, concise facts in his Complaint to support these elements; therefore, the undersigned cannot determine if Plaintiff's ADEA claim is viable.

---

protected activity and the adverse employment action. *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008).

[7] Courts have inherent authority to require plaintiffs to define the scope of their claims and it is their duty to do so at the earliest practicable stage of litigation. *See Johnson Enterprises of Jacksonville, Inc. v. FPL Grp., Inc.*, 162 F.3d 1290, 1333 (11th Cir. 1998) (citations omitted). While it appears that Plaintiff is attempting to assert Title VII discrimination and/or retaliation claims, the undersigned declines to speculate to such.

## V.     CONCLUSION

For the reasons stated above, it is the

RECOMMENDATION of the Magistrate Judge that Defendants' Motion to Dismiss (Doc. 9) be DENIED, and that Plaintiff be given leave to file an amended complaint that complies with this Recommendation and the Federal Rules of Civil Procedure. It is further

ORDERED that, should the District Judge adopt this Recommendation, Plaintiff shall file his amended complaint **no later than four weeks after the date of this recommendation's adoption**. Plaintiff is WARNED that his failure to file an amended complaint within this timeframe will result in the undersigned recommending that his case be dismissed for failure to prosecute. If Plaintiff chooses to file an amended complaint, he is advised that the complaint must comply with Rules 8, 10, and 11 of the Federal Rules of Civil Procedure, and the following:

(1) The amended complaint must set forth the specific federal causes of action under which Plaintiff brings his claims or allege sufficient facts to support diversity jurisdiction.
(2) Plaintiff shall number each cause of action and shall specifically identify the legal authority—i.e., the statute or the law—under which the claim is brought. For each cause of action alleged, the amended complaint must (1) identify the Defendant(s) against whom the claim is brought, (2) contain factual allegations about each Defendant's conduct, and (3) set forth all material facts giving rise to the cause of action. Plaintiff should note the relevant date of all such actions.
(3) The amended complaint must be set out in numbered paragraphs, each limited, as far as practicable, to a specific set of circumstances.
(4) Plaintiff shall attach to the amended complaint the EEOC Charge(s) and right-to-sue letter(s), if any, upon which his suit is based.
(5) Plaintiff should consider any other alleged deficiencies asserted by Defendants in their Motion to Dismiss (Doc. 9) when drafting his amended complaint, as Defendants will have an opportunity to file motions to dismiss the amended complaint.

**Plaintiff is advised that, once a complaint is amended, the only issues before the Court are those raised in the amended document, and Plaintiff will not be permitted to rely on or to incorporate his prior pleadings by reference.** *See Dresdner Bank AG v. M/V Olympia Voyager*, 463 F.3d 1210, 1215 (11th Cir. 2006) ("An amended pleading supersedes the former pleading; the original pleading is abandoned by the amendment, and is no longer a part of the pleader's averments against his adversary." (internal citation omitted)). In other words, the Court will look only to Plaintiff's amended complaint when conducting its § 1915 review.

**Further, Plaintiff is advised that, if this Recommendation is adopted and he fails to file an amended complaint within four weeks after said adoption, the undersigned will enter a recommendation that this case be dismissed for failure to prosecute and/or abide by orders of the Court.** Finally, it is

ORDERED that the parties shall file any objections to this Recommendation **on or before May 27, 2022**. A party must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered. Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) shall bar a party from a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error

or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11TH CIR. R. 3-1.  *See Stein v. Lanning Secs., Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

The Clerk of Court is directed to send a copy of this Recommendation to Plaintiff, via certified mail.

DONE this 13th day of May, 2022.

/s/ Stephen M. Doyle
Stephen M. Doyle
CHIEF U.S. MAGISTRATE JUDGE